I think we're ready to proceed. Let me just ask, it works surprisingly well, this oral argument with the masks, but you may want to elevate your voice just a little bit more than usual and lean a little bit more into the microphone, and that will be very helpful for us. We're ready to proceed with the motion. Thank you, Chief Judge Livingston. Cannon Chandigam of Paul Weiss for the movement Exxon Mobile. May it please the Court, in this case, Connecticut seeks to impose damages through the mechanism of state law for injuries allegedly caused by global climate change. Courts around the country are currently considering whether to impose damages through state law. The claims of this variety belong in state or federal court. In our view, for the reasons given by this Court in its recent decision in the City of New York, these claims are governed by federal common law because they are focused on climate change-related harms, and the claims arise under federal law for purposes of removal jurisdiction. The claims also necessitate the resolution of questions of federal law in an area of pervasive federal regulation, and they implicate actions taken at the direction of federal officers and conducted on the outer continental shelf. All of these arguments are set up— Chief Judge Livingston, we think that the balance of the equities more generally weighs in our favor, but I want to go directly to the issue of irreparable harm because the State argues in its opposition that this is merely about litigation costs, and, of course, litigation costs don't ordinarily constitute irreparable harm. I think what makes this situation different is the unique context of removal. First of all, any further proceedings that take place in state court are going to be subject to Connecticut's different and looser pleading standards and its more expansive discovery rules, and even if the results of those further proceedings can be undone, any resources devoted to those proceedings will certainly have been wasted. But I think, second, if the case is, in fact, ultimately held to be properly removable, the district court will have to confront the rat's nest of comedy and federalism issues that will result from attempting to recover the case from state court and determining what to do with any rulings that the state court has made in the interim. Well, if we ultimately determine that it's preempted, wouldn't that just resolve everything? What's the rat's nest we'd have to unravel? Can I ask you about the discovery rules? So you said that they have different discovery rules, but then you just said that there'd be expense that would be wasted. I mean, is there a concern that something is going to be revealed that wouldn't be revealed if you proceeded only in federal court? Is that an irreparable harm? No, the rules are simply different. And as we point out in our motion, Connecticut doesn't have the limitations on discovery. But I think our broader point, as I indicated, Judge Menasche, is simply that those resources will be wasted because the proceedings will have taken place in a forum that has no jurisdiction. But I do want to get to the other side of the balance in my short remaining time, because the state hasn't even attempted to identify any prejudice from the brief additional delay that would take place if the stay that is currently in place remains in place until the remainder of the briefing is complete. And this is a somewhat unusual situation because ExxonMobil has, in fact, already filed its opening brief in the underlying appeal. The state is now on the clock. The state has taken the full 91 days for its brief, but presumably the state would be willing to file its brief sooner if this court wanted to expedite the proceedings essentially as a condition for leaving the stay in place. Chief Judge Livingston, I don't know if I'm allowed to reserve a minute for rebuttal. If not, I'll simply proceed with the remainder of my argument. Why don't you proceed? We're eager to get onto the regular calendar. Sure. And I would say that, you know, in terms of the interests on the other side of the balance of the equities, the only thing that Connecticut identifies is its interest in the enforcement of its laws. But I would respectfully submit that that is insufficient when weighed against the fact that any further proceedings in State court really would be wasted if the case is allowed to return to the State court. And so I think in light of the likelihood of success on the merits, particularly with regard to Federal common law, in light of this Court's decision in City of New York, and in light of the balance of the equities, that a continuation of the stay that is already in place as a result of the administrative stay entered by Judge Hall is warranted. Thank you very much. Good morning, Your Honors. May it please the Court, my name is Daniel Sultan. I'm Assistant Attorney General with the State of Connecticut, and I represent the State of Connecticut in this matter. Your Honors, my brother counsel and ExxonMobil Corporation have, in four circuits, argued these very same points on motions to stay, and unanimously, in four circuits, this motion has been denied. And those circuits denied it for the correct reasons. ExxonMobil cannot make the required showings under an akin beholder. They cannot show irreparable injury, and they cannot show a likelihood of success on the merits. And you must show both to get a stay pending appeal. Well, can I ask about success on the merits? So in City of New York v. Chevron, we said that a nuisance suit seeking to recover damages for the harms caused by global greenhouse emissions can't proceed under state law. We said it was preempted. Is this different than that case? Yes, Your Honor, and the problem is the very formulation of what this case is. This is an unfair trade practices action brought by a sovereign state in its enforcement capacity pursuant to statute for what was said and advertised in the State of Connecticut. If I look at your complaint, you're seeking an order directing ExxonMobil to pay restitution to the state for all expenditures attributable to ExxonMobil the state has made and will make to combat the effects of climate change. So is it really possible for you to say that you're not seeking a state law remedy for the effects of climate change? Absolutely, Your Honor, because the restitution is a result of what Exxon said. It's not to globally address every climate change issue in the State of Connecticut or just climate change at all. I would point out, Your Honor, we don't seek to control emissions in this action. We don't seek to address transboundary pollution. In City of New York v. Chevron, we rejected the city's argument that since they were only seeking damages and not seeking to alter the policies that that made a difference because we said seeking damages would still implicate the federal interest in regulating greenhouse gases. But, Your Honor, we're not even seeking damages. What we're seeking is equitable relief pursuant to statute. Restitution, disgorgement, while they are monetary, they are not damages. They are – this is not a state – Well, you're not seeking restitution for the individual customers that you think were misled. You're seeking restitution for what the state has had to do to combat the effects of climate change. What we are seeking, Your Honor, as we articulated to Judge Hall, is restitution for those things attributable to Exxon's deception in this case. Nothing more. We're not seeking a global pay-for-every-climate-change-related concern in the state of Connecticut. What we are seeking is specific restitution relief among a host of constellations. Can you explain to me what the distinction between those two things are? What is the effects of climate change attributable to the misleading advertising or whatever as opposed to climate change generally? I think the difference is, Your Honor, that whatever we claim for restitution, we are going to have to show how it links in the trial court under CUPPA to the alleged violations. It's not just a global, this is a nuisance, do whatever is required. You don't have to do that in any lawsuit under state law seeking damages from climate change. You'd have to show some connection between your claim and the damage. That wasn't different in the city of New York, was it? Yes, Your Honor, but I'd also point out two other things about the city of New York. First, the city of New York is an entirely different action in this one. It wasn't brought in state court, it was brought in federal court. As the court went out of its way to point out in the city of New York, the devil is in that procedural detail. And it spent several pages articulating why the city of New York does not apply to cases that we're seeking remand. Not just ours, but a constellation of them across the country. It noted that the well-pleaded complaint rule controls for the purpose of removal, and that you must show complete preemption, not ordinary preemption, for the purpose of removal. Well, you also can show that there's substantial questions of federal law, right? I think, Your Honor— Under the Graybull standard. But regardless, in the city of New York, didn't we say there was complete preemption of these claims? No, Your Honor. Your Honor, this court held that there was ordinary preemption, that there was displacement of state common tort law by the Clean Air Act. And because this is not a state common law case, this is a CUTPA statutory case, nothing about the city of New York— You're saying the difference is between a common law cause of action versus a state statutory cause of action. Your Honor, I think— Why would that make a difference? I think that the major difference is that this is a statutory unfair trade practices act and not a state nuisance claim under common law. And there is a big difference in the articulation between what the Clean Air Act displaces in terms of common law and what it would displace in terms of an unfair trade practices act. Okay. Why don't you say something about irreparable harm? So we've heard that the rules for discovery are very different, the way that you'd be proceeding is very different, and all of that effort would be wasted if we operated separately on parallel tracks. Yes, Your Honor. I note that I'm only a few seconds left, so if I might answer your question. Okay, you can answer. Thank you, Your Honor. I'd point out three things, Your Honor. First, the Supreme Court has held in renegotiating board that litigation expenses, even if substantial and unrecoupable, do not constitute an irreparable injury, period. Second, the only distinction between the discovery rules in Connecticut and the discovery rules in the federal system is that it's a procedural one in terms of the number of interrogatories, and that may even be waived or extended by a federal district court upon request or motion. That's it. There's no substantive difference. There's no scope difference. And courts across the circuit have repeatedly held that the mere distribution of discovery does not constitute an irreparable injury because mere information once shared, you know, is not in and of itself an irreparable harm, you know, on its own. So you're saying that even if we – let's say we were confident that this cause of action were preempted and it was going to end up in federal court, you're saying we still shouldn't – we still should allow – enter this state, we still should allow the case to proceed on parallel tracks. Is that right? Yes, Your Honor, because the Ken is explicit. There must be both a showing of irreparable harm. But doesn't the strength of one factor vary with the weakness of the other? It does, Your Honor. And if there was an extreme confidence that there was a substantial likelihood of success by ExxonMobil here, which I would reiterate does not exist, every argument that Exxon raises in terms of its substantial likelihood of success has been disagreed with by another circuit, including, for example, in terms of preemption, the City of Oakland case, which was denied by the U.S. Supreme Court out of the Ninth Circuit, addressed exactly these arguments and rejected them. Would you have any difficulty if we were to expedite consideration of this appeal? Your Honor, I would not – you know, I don't – I would not have a particular issue in terms of expediting it. I would note that opposing counsel has had the full 90 days to brief this matter and it would be somewhat prejudicial for the State to deny us the same amount of time. We will, of course, do whatever needs to be done to comply with the court's orders. But you've just – you've just pointed out that this has been litigated in all of these other circuits and I – it's difficult to imagine you'd have difficulty whipping up a brief on this. Your Honor, we will get done whatever the circuit wishes us to get done. I have another question. I don't – my understanding is not that your adversary is just saying it's going to be expensive. I heard your adversary argue that there's going to be this intractable complexity caused by abstention doctrines and preclusions and that the whole thing is going to end up basically a mess. So, Your Honor – And that that can impair the quality of the justice that ultimately gets rendered. Why is that not sufficient? So, Your Honor, as the Supreme Court has held in the Granny Goose Foods Corporation case versus the Board of Teamsters case, right, Section 1450 allows a federal district court to evaluate any decision made by a state court prior to it being moved up to federal court. And not just prior to removal. The actual language in Granny Goose Foods articulates that it's designed to deal with a shift in jurisdiction in the middle of a case whenever a case moves from state to federal district court. But that's not – that's not an advantage to anybody and that's not a convenience to anybody and that does result in a mess. It allows the federal district court, Your Honor, to evaluate whether there's a concern at the state – with the state court's orders at all. If the federal district court looks at these decisions and says, there's no reason to re-argue these, there's no reason to reconsider these, the federal procedure would not articulate a different result than state procedure here, right? The personal jurisdiction issue that Exxon Mobil intends to argue next won't raise an issue or an anti-slap motion is not, you know, as Exxon agrees they intend to file, you know, isn't going to be addressed differently or the result would be absolutely the same, you know, in front of me as it would in front of the state court, then there is no mess. And the problem really, Your Honor, is it's so speculative. The Durbin case out of this court articulates that it must be an actual imminent injury, not just something that's remote and speculative or something that could happen, something that will happen. And the idea that it is possible that a state trial judge may make a decision that a federal trial judge might ultimately disagree with possibly down the road is – is levels upon levels of speculation that is in and of itself addressed by statute and by Supreme Court precedent allowing that judge to address it. So it can't be irreparable because there is a repair mechanism in place. So for all those reasons, Your Honors, we ask that the Court deny this motion to stay. Thank you very much. Thank you both. Well argued on both sides. We'll take the matter under advisement.